IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
UNITED STATES OF AMERICA    )
                            )    CRIMINAL ACTION NO.
     v.                     )        2:25cr392-MHT
                            )           (WO)
SYLENA CHRISTINA SALIKRAM   )
```

OPINION AND ORDER

Defendant Sylena Christina Salikram was indicted for engaging in a conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1343. A United States Magistrate Judge ordered Salikram detained. Salikram later pleaded guilty pursuant to a binding plea agreement. This case is now before the court on her motion to reverse the magistrate judge's detention order. The court has conducted an independent and de novo review of the record. For reasons that follow, Salikram's motion will be denied and her detention maintained pending sentencing.

## I.    Factual and Procedural History

The events underlying Salikram's indictment occurred in May 2025.  U.S. Postal Service employees contacted law enforcement based on their suspicions that Salikram and Devin Adkins, her co-defendant in this case, were engaging in fraud in the Montgomery, Alabama area.  On May 9, law enforcement attempted to approach Salikram and Adkins at a post office, but the pair got into a car and left the scene.  Adkins drove, and a high-speed car chase ensued.  The chase ended when Adkins crashed into a light pole on an interstate, causing the car to catch fire.  Both Salikram and Adkins were transported to the hospital for evaluation.

Adkins had minor injuries and was taken into police custody for attempting to elude law enforcement.  Salikram underwent surgery on her ankle, which had been seriously injured.  At some point while at the hospital, she gave an officer her phone number and Atlanta, Georgia address.  On May 11, she was discharged from the hospital

and picked up by Adkins, who had made bond by then.  A warrant was issued for her arrest on May 12.  She was federally indicted two months later.

Law enforcement called Salikram soon after she was discharged from the hospital.  She did not answer, and an officer left a voicemail requesting that she return the call.  A Montgomery law enforcement team also tried to contact her by sending a local officer to the Atlanta address she had provided.  No one responded to  the officer's knocking on the front door.

Eventually, in March 2026, Salikram turned herself into custody in Gwinnett County, Georgia, in response to a different arrest warrant.  She was then transferred into the custody of the U.S. Marshal Service in Montgomery.

After Salikram's arrest, the magistrate judge held a detention hearing and ordered her to be detained pending trial.  Soon after, Salikram filed a motion to review and a motion to reverse the magistrate judge's detention

order.   She entered a guilty plea shortly after.   The court granted the motion to review and ordered the parties to brief the motion to reverse, addressing, in particular, the applicable standard in light of Salikram's change of plea.

By agreement of the parties, the court now resolves the motion based on the evidence presented to the magistrate judge as well as the record in this case.

## II.  Applicable Law

When seeking to detain a defendant pending trial, the government has the burden to prove that the defendant poses a risk of flight or dangerousness that cannot be reasonably addressed with conditions of release.   *See United States v. King*, 849 F.2d 485, 488-91 (11th Cir. 1988).   Here, however, the circumstances are different. Salikram pleaded guilty after the magistrate judge's detention order.   As a result, the issue before the court is no longer whether she should be released pending

trial, but whether she should be released pending sentencing.

After a defendant has been adjudged guilty, the legal standard changes and the burden of proof shifts. In general, 18 U.S.C. § 3143(a) applies a rebuttable presumption of detention for almost all defendants. The statute requires detention of a defendant who has been found guilty "unless the [court] finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community" if released either on their own recognizance or under court-imposed conditions. 18 U.S.C. § 3143(a). The one exception to this presumption applies solely to those defendants "for whom the applicable [sentencing] guideline ... does not recommend a term of imprisonment." *Id.* Where the detention-pending-sentencing presumption applies, "[t]he burden of establishing that the defendant will not flee or pose a danger to any other person or to

5

the community rests with the defendant." Fed. R. Crim. P. 46.

The court has not yet received the presentence report and sentencing recommendation from the U.S. Probation Office. However, based on the extent of Salikram's criminal history, the nature of the offense, and the relevant sentencing guideline, the court concludes that the advisory guideline range will likely include a term of imprisonment.[1] Salikram does not contest this and, in fact, has consented, under a binding plea agreement, to imprisonment for a term of 36 months. Therefore, the presumption of detention applies.

The court's review of the magistrate judge's detention decision is de novo. *See United States v. Hurtado*, 779 F.2d 1467, 1481 (11th Cir. 1985).

---

[1]. The relevant sentencing guideline is U.S. Sent'g Guidelines Manual § 2B1.1 (U.S. Sent'g Comm'n 2025).

6

## III. Discussion

The court has reviewed the transcript of the initial detention hearing before the magistrate judge, as well as the evidence presented at that hearing.

The court emphasizes that, as indicated, the applicable legal standard has changed since the detention hearing before the magistrate judge. The court must determine whether Salikram has shown, by clear and convincing evidence, that she is not likely to flee or pose a danger to the safety of any other person or the community if released on personal recognizance or under conditions.

This case, as stated, is governed by § 3143. Section 3143, however, does not provide any helpful factors to guide the court in its determination of whether a defendant should be released pending sentencing. In contrast, § 3142, which governs release pending trial, does. The court finds these § 3142 factors (discussed below) to be instructive and helpful in making a § 3143

decision, and will, therefore, turn to them here. *See United States v. Vance*, 851 F.2d 166, 169-70 (6th Cir. 1988) (affirming a district court's § 3143 presentencing detention determination, which included analysis of the § 3142 factors).

Under § 3142, pretrial detention is permissible only when the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The court must consider four factors in making a § 3142 detention determination: the nature and circumstances of the offense charged; the weight of the evidence against the person; the history and characteristics of the person; and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g). The court will, as stated above, consider these § 3142(g) factors as well

8

as potentially appropriate conditions of release in its assessment of Salikram's danger and flight risks.

## A. Danger

Danger to the community includes not only the risk that a defendant would physically harm someone, but also "the danger that the defendant might engage in criminal activity to the detriment of the community." *King*, 849 F.2d at 487 n.2. Salikram has failed to show by clear and convincing evidence that she is not likely to pose a danger to another person or the community if released. *See* 18 U.S.C. § 3143(a).

Salikram has a substantial criminal history, as well as a history of violating the conditions of probation, which together suggest a risk of her committing more crimes. In the past decade, she has been convicted five times on financial fraud-related charges, including identity theft. She has also been on probation on some of these convictions and was arrested twice for violating

9

the conditions of her probation. These crimes were detrimental to the community because they involved stealing the personal information of others and defrauding the public. In the instant case, she presented stolen and false identity documents to postal office workers. *See* Plea Agreement (Doc. 52) ¶ 29. Officers also found seemingly stolen social security cards in the wreckage of the crashed car she occupied. *See* Complaint (Doc. 1) ¶ 12. She also has an open case in Gwinnett County, Georgia, where she is facing charges for similar fraud-related conduct. *See* Pretrial Services Report (Doc. 31-3) at 6.

Salikram's argument that her release would not pose a significant risk of her committing new crimes does not, by clear and convincing evidence, persuade the court. She contends that she does not pose a danger to the community because she has not engaged in any criminal conduct since the incident in this case. *See* Def. Memo (Doc. 65) at 9. Yet, as she herself acknowledges, the

10

record does not provide the date of the alleged Gwinnet County offense.  *See id.* at n. 4.  All that is known is that the case was brought some time in 2025, as shown by the case number.  *See* Pretrial Services Report (Doc. 31-3).  She also notes that the court has the authority to impose more intensive supervision measures to alleviate the risk of continued criminal activity, and the crime in this case could not have been committed by someone on home detention because it "involved traveling and appearing in person."  Def. Memo (Doc. 65) at 10. While this may be true, wire fraud and forgery in general are crimes that can easily be committed from home.  All that is required is access to the internet.

While, as Salikram notes, the bulk of her criminal activity occurred around 2017, it is noteworthy that the new offense and the old offenses are similar and, importantly, reflect a pattern of conduct into the present.  Also, the court is concerned that, given the number of Salikram's prior offenses and her current

11

financial struggles, there is some likelihood she may revert to criminal activity if released.  The risk of Salikram's return to criminal activity is also heightened by her apparent difficulty in finding work since injuring her ankle in May 2025.  *See* Pretrial Services Report (Doc. 31-3) at 2.  The circumstances surrounding the Gwinnett County arrest and charge, which apparently also include allegations of fraud, are also troubling.

Even the strictest supervision measures would not adequately mitigate this risk to the extent required by Salikram's burden of proof.  For instance, while the court could order Salikram be placed on home detention and location monitoring with no computer access, she lives with others, and there is no way to guarantee adequately that she could not gain access to their computers or cellphones, or that someone else could not bring tools for fraud to the home.[2]  Moreover, and at

_____

2.  The pretrial services officer also listed Salikram's history and charges involving the use of a

bottom, Salikram's extensive history of deception (past and current) reflects that she cannot be trusted to the extent needed under the clear-and-convincing standard. Accordingly, under that standard, no set of conditions could reasonably assure to the court the safety of the public from the possibility of Salikram's continued criminal activity if released.

## B. Flight Risk

Though Salikram's failure to prove by clear and convincing evidence that her release would not pose a danger to the community is sufficient to deny release, the court will, for the sake of completeness, also discuss the issue of flight risk.

Salikram argues that she does not pose a flight risk because she understands the seriousness of the

---

computer to "facilitate the offense" as one of the reasons that she poses a risk of danger and should remain in detention.   Pretrial Services Report (Doc. 31-3) at 7.

13

consequences and will remain in contact with her legal team here in Montgomery.  *See* Def Memo (Doc. 65) at 7-8. This may all be true.  Indeed, the court hopes that she does understand the seriousness of her actions and the consequences that accompany them.  But this reassurance is inadequate to meet her burden in light of the other evidence before the court.

The evidence reflects that law enforcement called Salikram soon after she was discharged from the hospital and left a voicemail requesting that she return the call, but she did not.  A Montgomery law enforcement team also tried to contact her by sending a local officer to the Atlanta address she had provided, but no one responded to the officer's knocking on the front door. Salikram contends that she was not aware of these efforts to reach her.  The court is reluctant to take her word as to these two pointed efforts to reach her for several reasons.

First, the May 9 through 11 events (her and Adkins being approached at the bank, the dramatic high-speed car

**14**

chase, and the giving of requested information (including her address) later to law enforcement at the hospital) would have put a reasonable person on notice that law enforcement would want to make further contact shortly. There is evidence that Salikram moved from the Atlanta address she provided to law enforcement to her cousin's home in Alpharetta, Georgia; but there is no evidence that she notified, and provided updated contact information to, law enforcement. Second, there is evidence that a Montgomery law-enforcement team tried to contact her by sending a local officer to the Atlanta address she had provided, but no one responded to the officer's knocking on the front door. She offers no explanation of why no one answered since, as the court understands, she had been mostly homebound because of her ankle. Of course, there is evidence that she moved from her home to her cousin's, but she does not offer this evidence as an explanation. Third, there is the fact that law enforcement left her a voicemail requesting that

15

she return the call and she did not.  She provides no credible explanation of why she did not return the call. Finally, there is Salikram's history of deception (recent and past).  For all, and each, of the above reasons, the court does not believe that Salikram was without fault in law enforcement's failure to reach her for many months after her discharge from the hospital.

She also notes that she only entered custody for this case after voluntarily turning herself in on an old warrant in another jurisdiction.  The court is concerned that she, apparently, learned about the warrant in May 2025, when she was questioned at the Montgomery area hospital, but did not turn herself in until March 2026. Admittedly, she contends that she did not turn herself in because she was still recovering from her ankle injury.  But an ankle injury does not justify no contact whatsoever for ten months, by phone or other means.  She essentially ignored the warrant for this period of time.

16

Finally, in 2019, Salikram was arrested for failure to appear on a 2016 Georgia criminal case. Apparently, and belatedly, she ultimately resolved the underlying charges and was convicted on two counts of financial transaction card fraud and four counts of forgery of a financial transaction card. She was sentenced to a total of five years, with the first 29 days to be served in confinement and the remainder to be served on probation. The court is not aware of the reason for her nonappearance until 2019. Therefore, a serious, unanswered question remains as to why the significant delay, especially since she bears the clear-and-convincing burden of justifying her release in this case.

While home detention and location monitoring conditions might help ensure Salikram's return if released, the court still cannot conclude, in light of the above observations, that it is "highly probable" that she would return given her past deception, criminal history, and lack of ties to Montgomery. *See Ward v.*

17

*Hall*, 592 F.3d 1144, 1177 (11th Cir. 2010) (noting that clear and convincing evidence requires proof that a claim is highly probable).  She has not shown, by clear and convincing evidence, that these conditions would adequately mitigate the risk of danger to the community.

## IV.  Conclusion

The court must admit that this case is close.  But close is not enough here.  First, Salikram now has the *burden of coming forward with adequate evidence*, and, second, that burden is to show by *clear and convincing evidence* that she should be released, that is, that the court could impose a condition or combination of conditions for release such that she would not pose danger and flight risks.  She has not met that burden.

***

Accordingly, it is ORDERED that:

(1) Defendant Sylena Christina Salikram's motion to reverse the detention order (Doc. 37) is denied.

18

(2) Defendant Salikram shall remain in custody pending sentencing.

DONE, this the 4th day of May, 2026.

_____/s/ Myron H. Thompson_____
**UNITED STATES DISTRICT JUDGE**

19